# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jessica Tango | * | |
| 1506 Falstone Lane | * | |
| Crofton, MD 21114 | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| | * | **Case No.: 22-1777** |
| | * | |
| v. | * | |
| | * | |
| | * | |
| | * | **JURY TRIAL DEMANDED** |
| United States Capitol Police | * | |
| 119 D Street Northeast | * | |
| Washington, DC 20510 | * | |
| | * | |
| *Defendant.* | * | |
| | * | |
| Serve: | * | |
| | * | |
| United States Capitol Police | * | |
| Office of the General Counsel | * | |
| 499 S. Capitol Street SW | * | |
| Suite 820 | * | |
| Washington, D.C.  20003 | * | |
| | * | |

## COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES

COMES NOW, Plaintiff, Private First Class Police Officer Jessica Tango (hereinafter "Plaintiff" or "Ofc. Tango"), by and through her undersigned counsel Dionna Maria Lewis, Esq. complains against Defendant, United States Capitol Police (hereinafter "Defendant" or "USCP") and in support thereof states as follows:

1

## INTRODUCTION

1. On July 16, 2019, Gus Papathansiou, Chairmen of the Fraternal Order of Police for the U.S. Capitol Police Labor Committee, testified before the U.S. House Committee on House Administration about the rise in race-based and gender-based discrimination within the United States Capitol Police. This testimony brought to light a "disturbing trend" of disparate and discriminatory treatment—USCP Annual Statistical Summary Report data of internal complaints filed in the Department demonstrated that "[d]espite the Department being majority Caucasian and male . . . the majority of employees proposed for termination in the last seven years have been minorities", and "women and people of color are more likely to be disciplined and to be disciplined more harshly than their fellow officers." This case is about the "Us versus Them" mentality that Mr. Papathanasiou says has existed within the Department for as long as he has been there; one that unjustly targets, mistreats, and silences the voices of Officers like Ms. Tango in violation of the law and the public trust.

2. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII") for the Defendant's unlawful harassment, discrimination, and hostile work environment based on sex (female), gender expression (female not conforming to employer's gendered standard of attire) and sexual orientation (lesbian) against the Plaintiff, as well as retaliation for her participation in a statutorily-protected activity.

## JURISDICTION AND VENUE

3.  This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*, to redress and enjoin employment practices of the Defendant.

4.  This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

5.  Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Washington, D.C.

6.  Additionally, venue is proper in the District of Columbia District Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendant transacts substantial business in this District, and Defendant maintains employment records related to this action in the District of Columbia.

## EXHAUSTION OF REMEDIES

7.  Plaintiff has exhausted all of her administrative remedies.

8.  On March 11, 2022, Plaintiff submitted her initial Claim Form with the Office of Congressional Workplace Rights (OCWR Case No. 22-CP-11 (CV)).[1]

9.  On March 14, 2022, Plaintiff received notice that a Preliminary Hearing Officer was appointed in her matter.

---

[1] Plaintiff's form was dated March 10, 2022.

10. On April 6, 2022, Plaintiff received an invitation to attend mediation on April 28, 2022 but was notified on April 28, 2022, that the employing office withdrew its mutual request for mediation, therefore the case was being returned to the adjudication process as a result.

11. On May 6, 2022, a Preliminary Report of the investigation was issued to Plaintiff providing Plaintiff with her Notice of Rights to pursue a civil action in federal court.

12. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 100 days of her filing of her initial Claim Form.[2]

## NATURE OF THE ACTION

13. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

14. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of her constitutional and statutory rights.

15. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

---

[2] Plaintiff's 100 days would have fallen on a weekend and the following day, June 20, 2022 was a recognized federal holiday, accordingly, pursuant to Federal Rules of Civil Procedure 6(a)(1)(C), Plaintiff's filing deadline is June 21, 2022.

## PARTIES

16. Plaintiff, Officer ("Ofc.") Jessica Tango, resides in Anne Arundel County, Maryland. She has been employed by Defendant since 2012.

17. The United States Capitol Police ("Defendant" or "USCP") is a federal police force in Washington, D.C., whose responsibility is to "safeguard the Congress, Members of Congress, employees, visitors, and Congressional buildings and grounds from crime, disruption, and terrorism."

18. Defendant's jurisdiction centers on the United States Capitol building in Washington, D.C., the adjacent congressional (House and Senate) offices, and the Library of Congress buildings. This primary jurisdiction is about 270 acres, with about 58 acres being the Capitol grounds themselves. The U.S. Capitol Police also have extended jurisdiction over parts of Northeast, Northwest, and Southwest Washington D.C.

19. Ofc. Tango works at the United States Capitol Police ("USCP").

20. During the relevant period, Defendant employed Plaintiff, Ofc. Tango.

21. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

## FACTUAL ALLEGATIONS

22. Plaintiff, Ofc. Jessica Tango has been employed by Defendant, the United States Capitol Police ("USCP") since 2012 until present.  Plaintiff currently works as an Officer with USCP.

23. Throughout the duration of her employment with Defendant, Plaintiff has worn Operational Duty Uniform ("ODU") pants designated as the "male" uniform style.

24. On July 20, 2021, Plaintiff requested a new ODU to replace her worn ODU pants and shirts. The Property Asset Management Division ("PAMD") employee responsible for the routine uniform exchange provided Plaintiff with ODUs marked "female."

25. The ODU shirts provided to Plaintiff by the PAMD employee fit Plaintiff, but the pants did not because they significantly restricted her mobility, which she had not experienced when previously wearing the pants labeled "male." Plaintiff requested to keep the ODU shirts marked "female" and instead requested to replace her current ODU pants with the style designated as "male."

26. The PAMD employee refused Plaintiff's request for the male-designated ODU pants, and asserted that Plaintiff must wear "female clothes" pursuant to Bulletin 20.84 regarding the "Issuance of Operational Duty Uniform (ODU) to Uniform Services Bureau Officers."

27. Bulletin 20.84 states in relevant part: "Officers will need to be fitted for the pants, shirts, and the outer shirt carriers, therefore they will need to try them on. Officers must have their body armor with them in order to be sized for the outer shirt carriers."

28. Nowhere in Bulletin 20.84 or Directive 101.001 (Uniforms and Equipment) is it stated that there are gender or sex-specific requirements for ODUs.

29. Rather than arguing further with the PAMD employee, Plaintiff reported back to her post on the Senate Division.

30. On December 3, 2021, Plaintiff received an email from PAMD Warehouse Specialist Mr. Cameron L. Smith stating that she had not retrieved her ODUs from PAMD. In his email, Mr. Smith stated that Plaintiff "can't wear the men's pants with a women's flexr shirt and vice versa."

31. Plaintiff replied to Mr. Smith's email and copied Inspector John M. Erickson, requesting the Capitol Police SOP or Directive stating that someone who identifies as a man or woman must wear a corresponding gender-specific uniform. Mr. Smith replied, "There is a uniform directive regarding this matter" but declined to cite to any such directive.

32. Plaintiff then asked multiple Senate Section Two Division Sergeants about the purported directive, and all have been unable to identify any such policy.

33. Defendant, through its responsible agents, well knows of Plaintiff's sexual orientation and that she is in a same-sex marriage. Additionally, Defendant widely understands that Plaintiff outwardly presents in a gender-neutral manner.

34. Based on reason, belief, and personal observations, similarly situated male Police Officers have been afforded the opportunity and latitude of wearing female designated short-pants (*i.e.,* shorts) in the Summer months due to the more desirable length and mobility that they give Officers to perform their jobs as compared to the male designated short-pants.

35. On December 14, 2021, Plaintiff filed a complaint with the Office of Professional Responsibility ("OPR"). Plaintiff was asked by OPR if she would handle the incident first without filing a formal complaint, which she declined to do.

36. Plaintiff believes that there has been an effort to discourage her as an Officer from using the available mechanisms for defending her rights and brings this action in recognition of all the other female Officers of USCP who may have had their voices suppressed.

37. Plaintiff has since been the recipient of harassment and backlash against her, and struggles to remain professional with a group of people who have belittled her and have characterized her as "that female who filed the complaint."

38. On February 2, 2022, Plaintiff was finally interviewed by Sgt. Dawn D. Smith from OPR in reference to her complaint. During the interview, Plaintiff felt that Sgt. Smith made multiple excuses for the reason that Plaintiff was not provided with the ODU pants she had requested. Sgt. Smith was not concerned, nor did she understand how the situation that Plaintiff had experienced made her feel. Plaintiff expressed to Sgt. Smith that she just wanted the pants that made her comfortable enough to be able to perform her job, which happened to be labeled "male."

39. In March of 2022, Plaintiff was forwarded an email from Sgt. Dawn Smith indicating that if she were "still interested in obtaining male FLEXR ODUs, PAMD has confirmed that they are in stock and she may respond to pick them up."

40. On April 19, 2022, Plaintiff received a notice from OPR that the investigation into her allegations of misconduct by Capitol Police was concluded, and that if warranted, corrective action had been taken. Nonetheless, Plaintiff has not been informed of any actual corrective actions that have occurred, nor have any applicable policies been made clear to her.

41. To this day, Plaintiff is unsure of whether her uniform request has been granted as a special exception, acknowledged as authorized by uniform policy, or if any applicable policies have been changed. As such, Plaintiff believes that her allegations of misconduct have not been sufficiently investigated, and that the capitulation to her request for men's Flexr pants is no more than an effort to shut down her complaint.

42. Plaintiff has suffered an adverse employment action wherein she has been denied a physically comfortable and properly fitting uniform to wear while on duty, which is deleterious to her as an employee. Such an adverse action is a significant, negative change

in her conditions of employment where working conditions require ease of movement and physical activity. Plaintiff's uniform issue is not one of style, fashion, or anything superficial.

43. The harassment and disparate treatment Plaintiff currently experiences are an unequivocal demonstration of discriminatory and disproportionate treatment of her as a woman, particularly when comparing her treatment to her similarly situated male or dress-compliant female colleagues. It is also an example of retaliation against her as an Officer who engaged in statutorily-protected activity by filing a complaint regarding her reported discriminatory treatment.

44. Plaintiff continues to work in a hostile work environment where she fears discrimination and retaliation at the hands of Defendant.

45. The Defendant's discriminatory practices have been effectuated in violation of federal statutes, including Title VII of the Civil Rights Act.

## COUNT I

## VIOLATION OF TITLE VII - SEX DISCRIMINATION

46. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

47. A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

48. Here, the four (4) elements of a *prima facie* case of sex discrimination are met. The Plaintiff is female and is considered a member of a protected class pursuant to Title VII of the Civil

Rights Act of 1964. Plaintiff is a qualified Police Officer, as she has approximately ten (10) years on the force and has had no disciplinary issues of record. Additionally, Plaintiff suffered an adverse employment action directly related to her membership in a protected class pursuant to Title VII, when she was denied the uniform of her choice despite no internal policies being identified that authorized such treatment which impacts a term, condition, and privilege of her employment; and later began to be subjected to a hostile work environment based on retaliation for complaining about sex discrimination, where she experienced harassment and harm to her reputation as a result of reporting what she legitimately believed was discriminatory treatment and a discriminatory policy that is not appliable to similarly-situated male Officers. Finally, the purported policy applied to Plaintiff was disproportionate when compared to policies that similarly situated colleagues outside of her protected class are held to.

49. The work environment and adverse action that Plaintiff has been subjected to materially affected the terms, privileges, and conditions of her employment.

50. Defendant knew that Plaintiff was female prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her sex.

51. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her sex.

52. Defendant treated Plaintiff in a way that deprived her of workplace safety and otherwise adversely affected her status as an employee because of her sex.

53. Similarly situated male employees have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and her workplace conditions.

54. Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

55. Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

56. Plaintiff has suffered an adverse employment action wherein she has been denied a physically comfortable and properly fitting uniform to wear while on duty, which is deleterious to her as an employee. Such an adverse action is a significant, negative change in her conditions of employment where working conditions require ease of movement and physical activity. Plaintiff's uniform issue is not one of style, fashion, or anything superficial.

57. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

58. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her sex.

59. Defendant discriminated against Plaintiff because of her sex by engaging in, tolerating, or failing to prevent sex discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

60. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

61. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

62. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

63. Further, Defendant's treatment and actions are ongoing.

64. Plaintiff has incurred loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

65. Defendant treated Plaintiff disparately in the terms and conditions of her employment compared with the way similarly situated male and dress-compliant female employees, or employees that had not engaged in protected activity, were treated.

66. By law, United States Capitol Police must comply with Title VII, but through their conduct have violated Title VII.

## COUNT II

## VIOLATION OF TITLE VII - SEX DISCRIMINATION (GENDER EXPRESSION)

67. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

68. A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

69. Here, the four (4) elements of a *prima facie* case of sex discrimination are met. The Plaintiff is female and is considered a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964 as a female not conforming to her Defendant-Employer's "gendered standard" of attire. Plaintiff is a qualified Police Officer, as she has approximately ten (10)

years on the force and has had no disciplinary issues of record. Additionally, Plaintiff suffered an adverse employment action directly related to her membership in a protected class pursuant to Title VII, when she was denied the uniform of her choice despite no internal policies being identified that authorized such treatment which impacts a term, condition, and privilege of her employment; and later began to be subjected to a hostile work environment based on retaliation for complaining about gender expression discrimination, where she experienced harassment and harm to her reputation as a result of reporting what she legitimately believed was discriminatory treatment and a discriminatory policy that is <u>not</u> appliable to similarly-situated male Officers. Finally, the purported policy applied to Plaintiff was disproportionate when compared to policies that similarly situated colleagues outside of her protected class are held to.

70. The work environment and adverse action that Plaintiff is subjected to materially affected the terms, privileges, and conditions of her employment.

71. Defendant knew that Plaintiff was female prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her gender expression.

72. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her gender expression.

73. Defendant treated Plaintiff in a way that deprived her of workplace safety and otherwise adversely affected her status as an employee because of her gender expression.

74. Similarly situated male employees and female employees who dress in accordance with Defendant's purported gendered uniform policy have been treated more favorably than the

Plaintiff with regards to the terms and conditions of employment and her workplace conditions.

75. Plaintiff's gender expression was a determining factor in Defendant's unlawful conduct toward Plaintiff.

76. Plaintiff's gender expression was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

77. Plaintiff has suffered an adverse employment action wherein she has been denied a physically comfortable and properly fitting uniform to wear while on duty, which is deleterious to her as an employee. Such an adverse action is a significant, negative change in her conditions of employment where working conditions require ease of movement and physical activity. Plaintiff's uniform issue is not one of style, fashion, or anything superficial.

78. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

79. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her gender expression.

80. Defendant discriminated against Plaintiff because of her gender expression by engaging in, tolerating, or failing to prevent gender discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

81. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

82. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

83. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

84. Further, Defendant's treatment and actions are ongoing.

85. Plaintiff has incurred loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

86. Defendant treated Plaintiff disparately in the terms and conditions of her employment compared with the way similarly situated male and dress-compliant female employees, or employees that had not engaged in protected activity, were treated.

87. By law, United States Capitol Police must comply with Title VII, but through their conduct have violated Title VII.

## COUNT III

### VIOLATION OF TITLE VII - SEX DISCRIMINATION (SEXUAL ORIENTATION)

88. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

89. A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

90. Here, the four (4) elements of a *prima facie* case of sex discrimination are met. The Plaintiff is a lesbian and is considered a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff is a qualified police officer, as she has approximately ten (10) years on the force and has had no disciplinary issues of record. Additionally, Plaintiff suffered an adverse employment action directly related to her membership in a protected class pursuant to Title VII, when she was denied the uniform of her choice despite no internal policies being identified that authorized such treatment which impacts a term, condition, and privilege of her employment; and later began to be subjected to a hostile work environment based on retaliation for complaining about sex discrimination as a non-gender conforming lesbian woman, where she experienced harassment and harm to her reputation as a result of reporting what she legitimately believed was discriminatory treatment and a discriminatory policy that is <u>not</u> appliable to similarly-situated male Officers. Finally, the purported policy applied to Plaintiff was disproportionate when compared to policies that similarly situated colleagues outside of her protected class are held to.

91. The work environment and adverse action that Plaintiff is subjected to materially affected the terms, privileges, and conditions of her employment.

92. Defendant knew or should have known that Plaintiff was a lesbian prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her sexual orientation.

93. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her sexual orientation.

94. Defendant treated Plaintiff in a way that deprived her of workplace safety and otherwise adversely affected her status as an employee because of her sexual orientation.

95. Similarly situated heterosexual employees who dress in accordance with Defendant's purported gendered uniform policy have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and her workplace conditions.

96. Plaintiff's sexual orientation was a determining factor in Defendant's unlawful conduct toward Plaintiff.

97. Plaintiff's sexual orientation was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

98. Plaintiff has suffered an adverse employment action wherein she has been denied a physically comfortable and properly fitting uniform to wear while on duty, which is deleterious to her as an employee. Such an adverse action is a significant, negative change in her conditions of employment where working conditions require ease of movement and physical activity. Plaintiff's uniform issue is not one of style, fashion, or anything superficial.

99. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

100. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her sexual orientation.

101. Defendant discriminated against Plaintiff because of her sexual orientation by engaging in, tolerating, or failing to prevent gender discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

102. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

103. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

104. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

105. Further, Defendant's treatment and actions are ongoing.

106. Plaintiff has incurred loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

107. Similarly situated heterosexual employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

108. By law, United States Capitol Police must comply with Title VII, but through their conduct have violated Title VII.

## COUNT IV

## VIOLATION OF TITLE VII – RETALIATION

109. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

110. Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id.* § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986).

111. Here, the Plaintiff faced retaliation for requesting ODU uniform pants designated for the opposite gender, for informally complaining about her differential treatment, for formally filing a complaint with OPR for Defendant's refusal to let her wear the uniform pants of her choosing, and for the subsequent harassment and adverse employment actions of the creation of a hostile work environment that she was subjected to.

112. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her vocal, outward, and documented complaints against Defendant in violation of Title VII.

113. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an OPR or OCWR representative, or otherwise should have known that Plaintiff had submitted a complaint against Defendant.

114. The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

115. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

116. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

117. Similarly situated employees were not subjected to the same, similar, or any adverse treatment.

118. Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other female employees, which creates a chilling effect in violation of Title VII.

119. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

120. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

121. Defendant failed to adopt clear policies and failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily-protected activities within the USCP.

122. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her opposition to Defendant's discriminatory conduct.

123. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

124. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

125. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

126. Plaintiff has incurred loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

127. The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot offer any legitimate reason for their unlawful conduct.

128. Defendant's actions were intentional, reckless, and malicious.

129. The United States Capitol Police must comply with Title VII, and by and through their conduct, violated the law.

<u>**COUNT V**</u>

**VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT**

130. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

131. When hostile work environment is alleged to have occurred as a result of unlawful discrimination, the Plaintiff must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on her statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States*

*Postal Service*, EEOC Appeal No. 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

132. Here, the five (5) elements of a *prima facie* case of a hostile work environment are met. The Plaintiff belongs to statutorily protected classes as a woman, a lesbian, and a female whose gender expression does not match her employer's gendered standards of dress. The Plaintiff was subjected to harassment and disparate treatment in the form of harm to her reputation as she became known and belittled as "that female who filed the complaint," while her requests for information and action from USCP management were disregarded, causing Plaintiff to feel alienated and dismissed, and was even pressured to not to pursue a formal complaint about her discriminatory experiences through the formal complaint process. Plaintiff was refused the right to wear ODU pants assigned to the opposite gender despite the lack of any policy preventing her request from being fulfilled, and despite the fact that similarly situated male colleagues have been permitted to wear female ODU shorts in the summer.

1. Plaintiff has suffered an adverse employment action wherein she has been denied a physically comfortable and properly fitting uniform to wear while on duty, which is deleterious to her as an employee. Such an adverse action is a significant, negative change in her conditions of employment where working conditions require ease of movement and physical activity. Plaintiff's uniform issue is not one of style, fashion, or anything superficial.

2. This harassment and disparate treatment affected several terms and conditions of Plaintiff's employment, causing harm to her reputation and relationship with her colleagues, and detrimentally affecting her comfort and ease of movement by preventing her from

receiving new ODU pants that she had requested in order to perform her duties fully. There is a basis for imputing liability, where PAMD and OPR staff, acting on the Defendant's behalf, subjected the Plaintiff to the abovementioned harassment and disparate treatment, because of her statutorily protected classes.

3. The actions and conduct of the Defendant as set forth herein created a hostile, offensive, and intimidating work environment and detrimentally affected Plaintiff.

4. The actions and conduct by the Defendant as set forth herein were severe, hostile, and pervasive, and constituted discrimination based on sex, gender expression, and sexual orientation, and retaliation for participation in a protected activity.

5. The actions and conduct described herein would have detrimentally affected a reasonable person of the same sex, gender expression, and sexual orientation in Plaintiff's position.

6. Defendant knew or should have known of the hostile work environment described herein. Defendant failed to adopt clear policies and failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily-protected activities within the USCP.

7. As a woman, a lesbian, and a female whose gender expression does not match her employer's gendered standards of dress, Plaintiff is a member of a protected class and she reported and complained about the differential treatment that she was subjected to, accordingly.

8. Because of her complaints about her treatment because of her sex, gender expression, and sexuality, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint.

9.  Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

10. Plaintiff has been treated differently and subjected to different terms and conditions of her employment as a result of her engagement in statutorily-protected activity.

11. Defendant has limited, segregated, and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee, relating to her terms, conditions, benefits, and privileges of employment with the Defendant.

12. Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than the Plaintiff in the terms and conditions of employment.

13. Plaintiff's sex, gender expression, sexual orientation, and engagement in protected activity were a determining factor in Defendant's unlawful conduct toward Plaintiff.

14. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

15. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Officer Jessica Tango, respectfully prays that this Court grant her the following relief:

a.  Enter a declaratory judgement finding that the foregoing actions of Defendant violated Title VII;

b. Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c. Award back pay and compensatory damages in the amount of $500,000 that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendant alleged herein;

d. Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e. Order such other relief as this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: June 21, 2022

Respectfully submitted,

Dionna Maria Lewis, Esq.
District Legal Group, PLLC
Bar No. 19486
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Jessica Tango*