UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JESSICA TANGO, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-1777 (RC) |
| | : | | |
| v. | : | Re Document No.: | 8 |
| | : | | |
| UNITED STATES CAPITOL POLICE, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff Jessica Tango, a U.S. Capitol Police ("USCP") officer, alleges that Defendant USCP discriminated against her and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. *See generally* Compl., ECF No. 1. Specifically, Tango, who describes herself in the Complaint as a "non-gender conforming lesbian woman," claims that USCP discriminated against her on the basis of her sex, gender expression, and sexual orientation when USCP temporarily denied her request for pants designated for males. *Id.* ¶¶ 2, 22–43, 90. She also makes related allegations that USCP created a hostile work environment, *see id.* at 21–24, and retaliated against her after she took protected actions in response to that temporary denial, *see id.* ¶¶ 109–29.[1] USCP moves to dismiss for lack of subject matter jurisdiction and failure to state a claim. *See generally* Mem. Supp. Def.'s Mot.

---

[1] Due to mismatched paragraph numbering in the Complaint, the Court cites to Plaintiff's hostile work environment allegations by page number.

Dismiss ("Def.'s Mot."), ECF No. 8-1.  For the reasons set forth below, the Court grants USCP's motion.

## II.  FACTUAL BACKGROUND

As it must at this stage, the Court accepts the well-pleaded factual allegations in the Complaint as true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Tango alleges that, "[t]hroughout the duration of her employment with [USCP], [she] has worn Operational Duty Uniform ('ODU') pants designated as the 'male' uniform style."  Compl. ¶ 23.  She also alleges that USCP, "through its responsible agents, well knows of Plaintiff's sexual orientation and that she is in a same-sex marriage," and also that she "outwardly presents in a gender-neutral manner."  *Id.* ¶ 33.

### A.  July 2021 Denial

Tango alleges that, when she requested new ODUs on July 20, 2021, a USCP property management employee provided her with ODUs marked "female."  *See id.* ¶ 24.  While the shirt fit, "the pants did not because they significantly restricted her mobility," so Tango "requested to keep the ODU shirts marked 'female' and instead requested to replace her current ODU pants with the style designated as 'male.'"  *Id.* ¶ 25.  The property management employee denied her request, claiming that an internal bulletin required that she wear "female clothes."  *Id.* ¶ 26.  Plaintiff did not challenge this denial.  *See id.* ¶ 29.

### B.  December 2021 Denial and Aftermath

On December 3, 2021, Tango received an email from a Warehouse Specialist on the USCP property management team "stating that she had not retrieved her ODUs" and that she "can't wear the men's pants with a women's flexr shirt and vice versa."  *Id.* ¶ 30.  In reply, Tango, copying USCP Inspector John M. Erickson, requested a USCP policy supporting USCP's

refusal to grant her request for male pants. *See id.* ¶ 31. Inspector Smith responded that there "is a uniform directive regarding this matter" but failed to "cite to any such directive." *Id.* ¶ 31. Similarly, Tango asked "multiple Senate Section Two Division Sergeants about the purported directive," but none were able to identify one. *Id.* ¶ 32.

On December 14, 2021, Tango filed a complaint with the Office of Professional Responsibility ("OPR") after declining OPR's request to "handle the incident first without filing a formal complaint." *Id.* ¶ 35. Tango alleges that she has "since been the recipient of harassment and backlash against her," including being "belittled" and "characterized . . . as 'that female who filed the complaint.'" *Id.* ¶ 37. On February 2, 2022, Tango was interviewed by Segreant Dawn Smith from OPR regarding her complaint. *Id.* ¶ 38. While Tango states that she "felt that Sgt. Smith made multiple excuses for the reason that [she] was not provided with the ODU pants she had requested" and "was not concerned," on March 1, 2022 Tango received an email from Sergeant Smith "indicating that if she were 'still interested in obtaining male FLEXR ODUs, [the property management team] has confirmed that they are in stock and she may respond to pick them up.'" *Id.* ¶ 38–39; *see* Ex. 1 to Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 10-2. On March 10, 2022, Tango filed a claim with the Office of Congressional Workplace Rights ("OCWR"). *See* Ex. 2 to Pl.'s Opp'n ("OCWR Claim"), ECF No. 10-3. On April 19, 2022, Tango received notice from OPR that the investigation into her complaint was "concluded, and that if warranted, corrective action had been taken." Compl. ¶ 40. On May 6, a Preliminary Report of the investigation was issued to Tango providing her with notice of her right to pursue a civil action in federal court. *Id.* ¶ 11. She filed this action on June 21, 2022. *See* Compl.

3

### III.  LEGAL FRAMEWORK

### A.  CAA and Title VII

Tango brings her claims under Title VII of the Civil Rights Act of 1964.  *See* Compl. ¶ 2. "Title VII of the Civil Rights Act makes it unlawful for an employer to 'fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (quoting 42 U.S.C. § 2000e–2(a)(1)).[2]  While Title VII does not on its face apply to USCP, *see* 42 U.S.C. § 2000e(b), the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 *et seq*., "extends the protections of Title VII . . . to covered employees of the federal legislative branch, including the Capitol Police."  *Breiterman v. U.S. Capitol Police*, 15 F.4th 1166, 1172 (D.C. Cir. 2021).

"The CAA incorporates much of Title VII's substantive law, but it establishes its own comprehensive administrative regime—including jurisdictional provisions."  *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 706 (D.C. Cir. 2009); *see Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 195 (D.D.C. 2016) ("Title VII cases prescribe the substantive legal standards that are applicable to an evaluation of the complaint's allegations of . . . discrimination . . . .").  The D.C. Circuit has held that the administrative exhaustion requirements of the CAA are jurisdictional, *see Blackmon-Malloy*, 575 F.3d at 705, although, as discussed in detail below, Congress substantially narrowed those requirements in 2018.  *See*

---

[2] Discrimination based on sexual orientation is cognizable as a form of sex discrimination under Title VII.  *See Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1743 (2020).

Congressional Accountability Act of 1995 Reform Act "(Reform Act")", Pub L. No. 115-397, 132 Stat. 5297 (2018).

### B. Motion to Dismiss

On a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), "[t]he burden of establishing any jurisdictional facts to support the exercise of the subject matter jurisdiction rests on the plaintiff." *CFA Inst. v. Andre*, 74 F. Supp. 3d 462, 465 (D.D.C. 2014); *see also McBride v. Mnuchin*, No. 19-cv-60, 2019 WL 3323412, at *2 (D.D.C. July 24, 2019) ("Before addressing the merits of a case, a court must confirm that it has subject matter jurisdiction." (internal citation omitted)). Where "Congress requires resort to the administrative process as a predicate to judicial review," a plaintiff's failure to exhaust that administrative process requires dismissal. *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004).

With respect to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), generally a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. In addition, while the Court must treat the complaint's factual allegations as true and draw reasonable inferences in plaintiffs' favor, the Court need not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor

legal conclusions cast in the form of factual allegations." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (internal quotations omitted).

## IV.  ANALYSIS

The Complaint brings five counts for violations of Title VII: (1) "Sex Discrimination"; (2) "Sex Discrimination (Gender Expression)"; (3) "Sex Discrimination (Sexual Orientation)"; (4) "Retaliation"; and (5) "Hostile Work Environment". Compl. at 9–24. USCP argues that the Court lacks subject matter jurisdiction over counts 2–5 because Plaintiff failed to administratively exhaust them. *See* Def.'s Mot. at 6–10. It further argues that, regardless, Tango has failed to state a claim as to any count principally because she did not sufficiently allege that she suffered an adverse employment action. *See id.* at 10–15. The Court addresses these arguments in turn.

### A.  Administrative Exhaustion

"In passing the CAA, Congress created [OCWR], through which legislative employees must attempt to address their grievances before seeking judicial or administrative redress." *Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 89 (D.D.C. 2011) (quoting 2 U.S.C. § 1381(a)). Importantly, as noted above, Congress substantially amended the CAA in 2018. *See* Reform Act, 132 Stat. 5297. The amendments took effect in 2019. *See Kabakova v. Off. of Architect of Capitol*, No. CV 19-1276, 2020 WL 1866003, at *8 n.7 (D.D.C. Apr. 14, 2020).

Most relevant, the Reform Act "eliminated the three-step administrative process previously required before an employee could file a federal civil complaint for judicial relief under the CAA." *Blake v. Architect of Capitol*, No. 19-cv-03409, 2021 WL 5990949, at *2 n.2 (D.D.C. Sept. 22, 2021). Previously, an employee had to (1) "commence a proceeding" by submitting a request for "counseling" within 180 days of the alleged violation; (2) submit a

6

request for mediation within 15 days of receiving "notice of the end of the counseling period"; and (3) file a civil complaint in federal court between 30 and 90 days after receiving notice of the end of mediation. *See Blackmon-Malloy*, 575 F.3d at 702 (citing prior version of the CAA). These requirements were embodied by cross-reference in 2 U.S.C. § 1408, titled "Civil Actions." § 1408 (2018). Under a subparagraph titled, "Jurisdiction," this section provided that

> [t]he district courts of the United States shall have jurisdiction over any civil action commenced under section 1404 of this title and this section by a covered employee who has completed counseling under section 1402 of this title and mediation under section 1403 of this title. A civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation.

§ 1408(a) (2018).

The Reform Act amended section 1408(a) to read simply: "The district courts of the United States shall have jurisdiction over any civil action commenced under section 1401 of this section by a covered employee." § 1408(a). Section 1401, as amended, provides that the "procedure for consideration of an alleged violation . . . consists of . . . the filing of a claim by the covered employee alleging the violation, as provided in section 1402." § 1401(a)(1). It further provides, under a subparagraph titled "Civil Action," that "[o]nly a covered employee who has filed a claim timely as provided in section 1402 of this title and who has not submitted a request for a hearing on a claim pursuant to section 1405(a) of this title may . . . file a civil action in a District Court of the United States with respect to the violation alleged in the claim, as provided in section 1408 of this title." § 1401(b)(1). Section 1402, as amended, provides that "[a] covered employee may not file a claim under this section with respect to an allegation of a violation of law after the expiration of the 180-day period which begins on the date of the alleged violation." § 1402(d). It also explains that an administrative claim "shall describe the facts that form the basis of the claim and the violation that is being alleged, shall identify the employing

7

office alleged to have committed the violation . . . and shall be in such form as the Office requires," § 1402(a)(2), but notes that these requirements "may [not] be construed to limit the ability of a covered employee . . . to file a civil action in accordance with section 1401(b)," § 1402(a)(3)(C).

In summary, before enactment of the Reform Act, the CAA provided for federal jurisdiction over a claimed violation only after an employee completed counseling and mediation, and could only be maintained with respect to the violation for which that counseling and mediation was completed.  See § 1408(a) (2018).  After enactment of the Reform Act, the CAA provides for federal jurisdiction over a claimed violation immediately after the administrative claim is timely filed with OCWR concerning that violation.  See § 1408(a); see Blake, 2021 WL 5990949, at *2 n.2 (explaining that, after the Reform Act, "plaintiffs . . . may file a complaint in federal court as soon as they file a formal complaint with the OCWR").  In this way, the Reform Act substantially narrowed the CAA's administrative exhaustion requirements.

USCP cites pre-Reform Act case law regarding administrative exhaustion as if it is unaffected by the wholesale removal of the counseling and mediation requirements from the CAA.  See Def.'s Mot. at 4.[3]  Most importantly, USCP points to case law concerning the prior counseling and mediation requirements for the proposition that section 1402's requirement that an administrative complaint must "describe the facts that form the basis of the claim" amounts to a jurisdictional administrative exhaustion condition.  See Def.'s Mot. at 6–7 (citation omitted).  From there USCP argues that "Plaintiff did not raise any facts relating to a gender expression or

---

[3] Because Tango filed her complaint after [the effective date] of the Reform Act, "this suit is subject to" its amendments.  Blake, 2021 WL 5990949, at *2 n.2

8

sexual expression or sexual orientation claim," nor "any factual allegations setting forth a retaliation claim," nor "any facts that could support a hostile work environment [claim]." *Id.* at 7–9. But section 1402 explicitly states that "[n]othing" in its provisions concerning the required contents of an administrative claim "may be construed to limit the ability of a covered employee . . . to file a civil action." § 1402(a)(3)(C). Accordingly, the post-Reform Act CAA only requires that an employee file a timely administrative claim in order to pursue a civil action in federal court regarding the claimed violation. §§ 1408(a), 1401(b)(1).

Here, it is undisputed that Tango timely filed her OCWR claim as to the December 2021 denial. *See* § 1402(d) (providing that an employee "may not file a claim under this section . . . after the expiration of the 180-day period which begins on the date of the alleged violation"); OCWR Claim at 7, 9 (showing the Plaintiff filed her OCWR claim on March 10, 2022, less than 180 days after the December 2021 denial).[4] It is also undisputed that she timely filed this action. *See* § 1401(b)(4) (providing that an employee has 90 days to file after receiving notice from OCWR of her right to file a civil action); Compl. ¶ 11 (stating that Plaintiff received such notice on May 6, 2022, less than 90 days before she filed suit on June 21, 2022).

The only remaining question is whether the present civil action is "with respect to the violation alleged in the [OCWR] claim." § 1401(b)(1). Taking Tango's gender expression (count 2) and sexual orientation (count 3) claims first, USCP argues that she "never raised her sexual orientation or her gender expression in her claim form." Def.'s Mot. at 7. The Court agrees that Tango did not claim that she was discriminated against on the basis of her sexual orientation in her OCWR claim. The claim form makes no reference whatsoever to the topic of

---

[4] Notably, as USCP points out and as discussed further below, Plaintiff did not timely file an OCWR claim as to the July 2021 denial, which occurred more than 180 days before she filed her OCRW claim on March 10, 2022. *See* OCWR Claim at 7.

9

sexual orientation, and repeatedly makes clear that Tango feels she was "discriminated against because [she is] a woman." OCWR Claim at 6. Accordingly, Tango did not exhaust her claim of discrimination based on her sexual orientation, so the Court lacks jurisdiction to consider count 3.

However, Tango's OCWR claim did contain sufficient allegations of gender discrimination. For one thing, she checked the box for "Gender" discrimination on the claim form. *See id.* at 5. For another, her central allegation—that she was denied male pants even though she felt most comfortable wearing them—while perhaps more easily understood as traditional sex discrimination (i.e., discrimination based on the fact that she is biologically female), is conceivable as specifically gender discrimination (i.e., discrimination based on the fact that she does not conform to the male/female binary manifest in the ODU designations). The distinction can be slippery, *see* Def.'s Mot. at 7 (arguing in one sentence that Plaintiff "did not raise any facts relating to a gender expression . . . claim in her claim form filed with the OCWR" but in the next that "Plaintiff raised only one discrimination claim at the OCWR, specifically discrimination based on her *gender* as a 'female'" (emphasis added)), and the Court declines to parse her OCWR claim so thinly as to require academic precision to state a violation for gender discrimination. *See President v. Vance*, 627 F.2d 353, 362 n.65 (D.C. Cir. 1980) ("'[T]he specific words of the (administrative) charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow.'" (citation omitted)); *Knight v. Mabus*, 134 F. Supp. 3d 348, 355–56 (D.D.C. 2015) (explaining that administrative charges of discrimination "are to be liberally construed 'since very commonly they are framed by persons unschooled in technical pleading.'" (quoting *Brown v. Marsh,* 777 F.2d 8, 13 (D.C. Cir. 1985)).

Turning to her retaliation (count 4) and hostile work environment (count 5) claims, the Court agrees with USCP that Tango did not claim these violations in her OCWR claim form. Tango did not check the boxes for "reprisal" or for "harassment" on her claim form. *See* OCWR Claim at 5. She made no allegations that she was retaliated against for her protected activity, nor that she experienced "pervasive" discriminatory abuse. *See Saba v. U.S. Dep't of Agric.*, 26 F. Supp. 16, 26 (D.D.C. 2014); OCWR Claim at 6. She simply alleged that she was denied male pants, that such denial was due to her protected characteristics, and that she was unsatisfied with the result of OPR's investigation. *See* OCWR Claim at 6. The Complaint attempts to cure these deficiencies with allegations that she "has been the recipient of harassment and backlash" including being "belittled" and "characterized . . . as 'that female who filed the complaint,'" but no allegations of this kind appear in the OCWR claim. Compl. ¶ 37. Thus, the Court lacks jurisdiction to consider her retaliation and hostile work environment claims. *See Hyson*, 802 F. Supp. 2d at 95–96 (dismissing for lack of jurisdiction plaintiff's allegations of "difficulty . . . obtaining an accommodation for an allergy to her work uniform" and a "retaliatory demand that [she] stop associating with a particular coworker" because they were "raised for the first time before [the] Court").

### B.  Adverse Employment Action

Title VII "establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *See Brady*, 520 F.3d at 493. While Tango successfully exhausted her administrative remedies as to her sex (count 1) and gender discrimination (count 2) claims, she has not sufficiently alleged that she suffered an adverse employment action and therefore fails to state a claim as to either count.

The D.C. Circuit recently redefined what qualifies as an "adverse employment action" for Title VII discrimination claims. *See Chambers v. District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022) (en banc).[5] Overruling *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), the Circuit discarded the previous rule that only "objectively tangible harm" could constitute an adverse employment action. *Id.* at 872. Instead, it held that an adverse employment action occurs whenever "an employer has discriminated against an employee with respect to that employee's 'terms, conditions, or privileges of employment' because of a protected characteristic[.]" *Id.* at 874–75. While the Circuit's ruling "appears to be limited by its terms to cases involving [job] transfers," several courts "have determined that the *Chambers* opinion has broader application." *McCallum v. Mayorkas*, No. 21-cr-1911, 2023 WL 3203011, at *9 n.9 (D.D.C. May 2, 2023).

The *Chambers* court also noted, however, that "the phrase [terms, conditions, or privileges of employment] is not without limits" and does not encompass "everything that happens at a workplace." *Chambers*, 35 F.4th at 874. And its opinion did not disrupt the Supreme Court's caution against using Title VII as a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also McCallum*, 2023 WL 3203011, at *13 ("Although plaintiff might have been disappointed by some of defendant's decisions . . . 'not everything that makes an employee unhappy is an actionable adverse action.'") (quoting *Russell v. Principi*, 257 F.2d 815, 818 (D.C. Cir. 2001)).

Here, Tango alleges that she suffered an adverse employment action when she was "denied a physically comfortable and properly fitting uniform to wear while on duty." Compl. ¶ 42. She asserts that this denial was a "negative change in her conditions of employment where

---

[5] Plaintiff initiated this action on June 21, 2022, after the Circuit decided *Chambers* on June 3, 2022. *See* Compl.

12

working conditions require ease of movement and physical activity" and that her "uniform issue is not one of style, fashion, or anything superficial." *Id.*

The problem is that Tango does not allege that she was ever, in fact, deprived of the pants she preferred. As noted above, the initial denial of Tango's request for male pants in July 2021 was not timely raised in her OCWR claim, so the Court focuses on the December 2021 denial. *See supra* note 4. That denial occurred on December 3, 2021, when Tango received an email from a Warehouse Specialist on the USCP property management team "stating that she had not retrieved her ODUs" and that she "can't wear the men's pants with a women's flexr shirt and vice versa." Compl. ¶ 30. Tango filed her complaint with OPR on December 14, 2021, she sat for an interview with Sergeant Smith from OPR on February 2, 2022, and she received an email from Sergeant Smith informing her that male-designated ODU pants were available for her to pick up on March 1, 2022. *Id.* ¶¶ 35, 38–39; Ex. 1 to Pl.'s Opp'n. Plaintiff makes no allegation that USCP confiscated the male-designated ODU pants she already possessed, nor that she was forced to wear female-designated ODU pants at any point. *See* Compl. ¶ 23 (explaining that "[t]hroughout the duration of her employment with Defendant, Plaintiff has work [ODU] pants designated as the 'male' uniform style" and never alleging that she was forced to wear female ODU pants); OCWR Claim at 6 (explaining that Tango simply "reported back to [her] post" after the July 2021 denial).

An 11-week delay in receiving an additional set of pants, with no change in circumstances in the meantime, does not constitute an adverse employment action. *See Garza v. Blinken*, No. 21-cv-2770, 2023 WL 2239352, at *5 (D.D.C. Feb. 27, 2023) (rejecting notion that a "proposed letter of reprimand" constituted an adverse employment action because the plaintiff failed to "state that the proposed letter of reprimand resulted in an office transfer, a change in

13

responsibilities, or *anything* to suggest that the terms and conditions of her employment were affected *at all*"); *McCallum*, 2023 WL 3203011, at *12 (finding that a negative performance review that "gave the plaintiff new tasks and reminded of defendant's telework policy" but did not "affect[] her grade or salary" was not an adverse employment action"); *Heavans v. Dodaro*, No. 22-cv-836, 2022 WL 17904237, at *8 (finding no adverse employment action in a supervisor's "correction of plaintiff's pronunciation of [the supervisor's] name in several successive team meetings . . ., her making inquiries about [plaintiff's] performance as manager while he was away, her giving plaintiff poor performance ratings in his . . . reviews, and her reinstatement of a previously discontinued project under a different supervisor . . . .").

      Moreover, even if the temporary denial of additional ODU pants did constitute an adverse employment action, Plaintiff admits that her request for male-designated ODU pants was granted before she even submitted her OCWR claim, let alone initiated this action. *See* Ex. 1 to Pl.'s Opp'n (email dated March 1, 2022 informing Tango that she may pick up the male-designated ODUs); OCWR Claim at 9 (claim form dated March 10, 2022); Compl. ¶ 41 (acknowledging that, while Tango remains "unsure" of why, her "uniform request has been granted").  As USCP did here, "[a]n employer may cure an adverse employment action . . . before the action is the subject of litigation." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003); *Turner v. U.S. Capitol Police Bd.*, 983 F. Supp. 2d 98, 106 & n.3 (D.D.C. 2013) (explaining that a mediocre performance evaluation that was only in plaintiff's personnel file for "several months" was not an adverse employment action because it did not "impact[] her professional opportunities" and "cannot have any impact in the future," and noting that "[i]n this Circuit, an employer may cure an adverse employment action before the action is subject to litigation").

## V.  CONCLUSION

For the foregoing reasons, USCP's Motion to Dismiss (ECF No. 8) is **GRANTED** and the action is **DISMISSED** without prejudice.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 26, 2023                                                                       RUDOLPH CONTRERAS
                                                                                                          United States District Judge